County. Mr. DePasquale. Yes. Please, the Court, James DePasquale on behalf of the appellant Janine Orie. What I'd like to do is go first to the jurisdictional issue, if I might, Your Honor. The mistrial in Janine Orie's situation was totally different than the mistrial in Jane Orie's situation, even though they were co-defendants. The documents that were at issue had nothing whatsoever to do with Janine Orie, were never even referenced by Janine Orie in her defense or referenced by the prosecution of Janine Orie. And we... Is that legally significant? Do you have a case that says if you have co-defendants and there's evidence in the record that is before the jury that's forged or false and has to be dealt with that you can stop the case as to one and let the jury keep going as to another co-defendant? Well, let me do the converse, Your Honor. There's no case law that says that you cannot let the case go as to one defendant and not as to the other, especially whenever these co-defendants are involved in a case that is not related to Janine Orie in any way. Was there any application made to the trial court that said, listen, you go ahead and mistry as to Jane if you want, but we want the jury to keep going as to Janine. Absolutely. And here's my authority for that. Absolutely, positively. In fact, what happened here was I stood up and said, look, if you're talking about these documents, Your Honor, and the Commonwealth and Mr. Claus is talking about these documents, none of this has anything to do with Janine Orie. And if there is a mistrial, it should have nothing to do with Janine Orie. And if you take a look at the record, the court says you're correct, Mr. DePasquale. And at that point, by the way, I'm excused. I leave. I wasn't even present whenever the argument takes place about these documents because they had nothing whatsoever to do with Janine Orie. When I come back to the courtroom, I'm told that there's a mistrial to Janine Orie. I wasn't even present whenever that was granted. Now, the judge did say, well, I'll let you argue, but I've already made up my mind. Now, but I believe that the certificate of appealability we granted is on the in-custody issue and on the standard of review, right? We're not getting to that. If you win here, you get a chance to litigate that further. But you've got some real problems here because your client received no further penalty. So as with Mr. Costopoulos, we have to ask you, we have to do this count by count. Under Pennsylvania law, no further penalty is a discrete. I don't see anything that's What happened here, your honor, was that Judge Nauhaus, who did the second trial, he crafted a sentence where he imposed penalty for the state senate matter, which technically there was no, but he ordered first that there be restitution paid on the state senate matter. I think it was $12,000. And then secondly, although it later proved to be illegal, he had ordered that letters of apology be written to the state senate staffers. That's off the table, right? As you said, that got kicked by the superior court, but was not part of the sentence. But the restitution was part of the sentence, your honor. But restitution is not, under our law, a custodial sentence. You have to have a custodial sentence. So how do you get past custodial sentence? Well, the second part of it is the judge made clear a number of times that he was giving a total sentencing scheme. And in giving the total sentencing scheme, I mean, what happened here is obvious. Judge Nauhaus thought that it was possible because of the double jeopardy argument that those state senate charges are going to go away. As I understand it, under Pennsylvania law, it is the written sentencing order that counts here under Isabel, right? So you have some oral comments, but what we're reviewing is a written judgment of conviction and sentence that says this is no further penalty. You are absolutely correct, Judge Rebus, that the order of sentence does not impose a sentence because of the state senate charges. Our argument is and always has been that despite the fact that the order of sentence is no further penalty, in fact, there was a sentence that resulted from that. And get us past the state law point, Isabella, that Judge Bebas just said. If under Pennsylvania state law, the sentence that we are to review on a habeas challenge is the written sentence and not whatever a judge says in the courtroom, but what is the sentencing order, and that sends out penalties in a certain way, what allows us to look past that order and say, hey, wait a second, we think you're really opposing a sentence here for this count, even though you said no further penalty? Your Honor, I don't think that there's any specific authority for that, but I think that the facts of the record cry out for that in this particular case. You're making some kind of equitable pitch to ignore the sentencing order and say we believe that the judge was really trying to hit you for this and was trying to do it in a way that would be unreviewable because of double jeopardy concerns. That's what I hear you saying. Do you have authority for that? Any case that's done anything like that? No, there is no authority for that, but what you're saying, Judge Jordan, is absolutely what I believe, that there was a sentence imposed that Judge Nauhaus knew exactly what he was doing, and I'm not trying to disparage Judge Nauhaus, but he knew exactly what he was doing and that he was, in fact, imposing a sentence because of the state senate convictions, and in order to avoid the double jeopardy argument, he just pushed everything into the Supreme Court office convictions. Well, help me out also with the standard of review here, because this had the unfortunate piece where a 60 v. 1 motion was filed. Your argument is that even though 60 v. 1 is the district court said after it said there's no excusable neglect, but I'm going to look at the record and make a determination on my own anyway, that that puts us into de novo review. Judge Hornak certainly does not use the words de novo, but if you look at Henderson v. Carlson, which is a 1987 Third Circuit decision, what Henderson v. Carlson says is whenever the court makes a de novo determination, it is irrelevant that the objections were untimely. Henderson, the holding is failure to object doesn't waive your appellate rights. That's right. They drop footnote four and they say, oh, and by the way, we did an independent review here, and so it would arguably be proper to do de novo review even if there had been no objection, and in other words, they equate it with that arguably proper, the failure to object becomes irrelevant. But this is in a case that's about whether there's a waiver of appellate rights. The case isn't about standards of review, and this is just an aside in footnote four. Now, I know that, you know, why should we treat that as our circuit's law? Well, because it's a well-reasoned case, and the footnote is reasoned. I mean, what happened here factually was simply this. There was a decision made, or rather there was a report and recommendation made by the magistrate, and quite frankly, these things went on for an awful long time. Yeah, we understand the procedure. Okay. So I'm kind of concerned if we went this route, I mean, you have some dictum from there, and then we have NARA, which I also think is a response to the party's argument rather than an aside. But maybe you want to say that's persuasive. My concern is if we go and say every time that a district court has a belt and suspenders approach, oh, this is untimely, but in any event, we'd reject it, which is boilerplate in a lot of these district courts. Suddenly, everybody gets past the failure to object. Nothing is on plain error review. The district court gets penalized for having thrown in an alternative of, yeah, and if we looked at this anyway, it would be okay. So am I wrong? Would all of these wind up being on de novo review then? No, I think you're right, Your Honor, and I don't think that the district, I believe that the district court knows what it's doing, and if the district court is saying, I determined this case based upon the merits, which is what Judge Hornak said in this particular, in our case. Doesn't that just undermine completely the purposes of Rule 60B? Rule 60B is there in large measure, is it not, to prevent people from failing to timely raise their objections, and if they fail to timely raise their objections, then they have to meet this higher, so they've got to show excusable neglect, and we have to give due respect to the district court judge's exercise of discretion in reviewing that excusable neglect. If every time a district judge says, and I tend to agree with Judge Bevis, that there is sort of, it's almost boilerplate language that says, and I've looked at this on my own and would disagree anyway, just sweep 60B1 and all its protections to the side and you're in de novo land, can that really be the way the rules are supposed to work? Well, if we're focusing on 60B1, Your Honor, there is also an argument, we're also making an argument that it was, in fact, excusable neglect under 60B1 what happened here, and that's what I was attempting a few seconds ago to get into. What happened, in essence, was that I assumed that my assistant had contacted Janine Orr, he had made her aware, my assistant assumed, and rightfully so, that I had contacted her. That's garden variety, lateness or negligence, and if we say every time the dog ate my homework, the secretary didn't file this, then we've blown a giant hole in the timeliness rules. Yeah, how do you get around NARA? Because in NARA, the Commonwealth was able to say, we literally didn't know about it. In your case, you did know about it, you made an assumption about what your assistant would do, and your assistant made an assumption about what you would do, and maybe it works pretty seamlessly for you folks, you know, 99.9% of the time, but there was an assumption there which seems to put you kind of into NARA plus land. You're worse off in the sense that you knew about it, they were able to claim with some legitimacy we did know about it, and still the court said no excusable neglect. I'll tell you how we get around NARA. NARA involved the Commonwealth. There was no client. The Commonwealth was the Commonwealth. The attorney for the Commonwealth was actually the only person. In this case, there is not only an attorney, there is a client, and Janine Ory was the client. She's the one that is prejudiced by this. We always have that in virtually all cases, right? Clients are bound by the actions of the attorneys, but we understand your argument. It was well briefed, and we'll hear from Mr. Wabi. We'll have him back. Thank you. You reserved time for rebuttal, right? Did Mr. Dubek-Swale, did you reserve time for rebuttal? I did not, Your Honor. Okay, fine. Mr. Wabi. May it please the Court, Deputy District Attorney Ronald Wabi for the Appellees, Your Honor. As far as the, I believe Judge Bee was hit it perfectly regarding whether or not Judge Hornak erred when he went beyond that. I mean, he said, okay, well, you lose under excusable neglect, but used a belt and suspenders approach and said, it doesn't matter, you're going to lose anyway. I don't think there's anything wrong with that, and I think it stays in the plain error standard of review. Well, respond to the language we've got here in NARA where we said, yeah, it's, the Commonwealth argues that we should nonetheless review the report and recommendation de novo because the district court reviewed the report and recommendation de novo. We disagree. There is no indication that the district court conducted an independent review of the entire record and applicable law de novo, nor was the district court under any obligation to do so. It seems like the implication there is that if the district court had reviewed it de novo, then we would be reviewing it de novo. That's correct, but in this instance, what happened was. Well, here the district court said, I am reviewing it de novo. So why isn't that squarely on this NARA point? I do disagree to a point, and this is what it is, is that there was a report and recommendation issued. The order was entered. Presumably at that point in time, Judge Hornak reviewed the record and accepted that as the opinion of the court, and one of the claims at that point in time was the same claim we have before us. It was the exact, it was the idea that they had, there's no jurisdiction because they're no longer serving that sentence. Judge Hornak basically put, I guess, put his reasoning for that conclusion in his memorandum of orders denying the 60B motion, but I don't believe that. I'm not sure how that gets you past NARA and past Henderson, which says in that footnote four, I mean, it's what NARA is relying on. It seems to say the same thing. Hey, district court reviews it de novo, we're going to review it de novo. And, Your Honor, even if you reviewed it de novo, they still lose. They still lose because he's not serving a sentence at that criminal information, and there's no collateral consequences that will allow you to do that. The Hornak case. So the protestations about double jeopardy, those are meaningless because there was, because why, right? We've got a COA argument. You've got a certificate of appealability argument there. That's correct. The COA was granted as to the idea that she received no further penalty at that criminal information. All the charges that came from the criminal information that was from the 2010 case, the one that double jeopardy claim is attached to, she received no further penalty for any of those charges. Therefore, she is not serving a sentence. She's not in custody pursuant to federal habeas review. So, therefore, she cannot receive any relief on that case. And what's your response to Mr. DiPasquale's argument that I take it to be that that's fundamentally unfair, that that's allowing the trial judge to manipulate the sentencing order in a way that avoids the primary or one of the primary arguments she's got about the unfairness of the trial process. She did have the opportunity, Your Honor, to appeal that to the Superior Court of Pennsylvania. They reviewed her double jeopardy claim. That is what her appellate review was entitled to. There's no requirement for federal habeas review to carry the same appellate protections. Federal habeas review is limited to people who are serving a sentence. And that is the difference between a direct appeal and a long-term collateral attack. She had direct appellate review. She received it. It doesn't matter the way Judge Nauhaus wrote the sentence. She received the review she was entitled to. Now, on federal habeas review, the standards differ. There's different procedural concerns. There's a different statute involved. It changes the game. So, in this arena, she has to be serving a sentence. And she's not serving a sentence. Therefore, she's not entitled to review. All right. Thank you, Mr. Wabi. Thank you. And thank you, Mr. Vesquale. We've got that case under advisement. We'll call our next witness.